# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

FILED
Scott L. Poff, Clerk
United States District Court

By casbell at 4:14 pm, May 15, 2017

CHERYL EDENFIELD, as Mother
and Legal Guardian of QUINCY
EDENFIELD, an incapacitated
adult,

    Plaintiff,

v.

GATEWAY BEHAVIORAL HEALTH
SERVICES,

    Defendant.

2:16-CV-170

## ORDER

Sovereign immunity bars Plaintiff Cheryl Edenfield's ("Cheryl") (as mother and legal guardian of Quincy Edenfield ("Quincy")) state-law tort claims and makes her motion to amend futile. But her 42 U.S.C. § 1983 ("Section 1983") claim survives, as does her contract-breach claim. Thus, Defendant Gateway Behavioral Services' ("Gateway") Motion for Judgment on the Pleadings, dkt. no. 14, will be **GRANTED in part and DENIED in part**, and Cheryl's Motion to Amend the Complaint, dkt. no. 15, will be **DENIED**.

## BACKGROUND

**Quincy Receives Gateway Services**

The Court assumes the truth of the facts alleged in the complaint. Quincy has "Severe Autistic Disorder and Unspecified Intellectual Disabilities." Dkt. No. 1-3 ¶ 5. He receives housing, transportation, and behavioral services from Gateway. Id. ¶ 8. Since May 2012, Quincy has lived at a Gateway home. Id. ¶¶ 6, 8a. Quincy goes to a Gateway day center between 8:30 A.M. and 2:30 P.M. Id. ¶ 8b.

Cheryl is Quincy's mother and has been his guardian and conservator since March 23, 2015. Id. ¶ 7. Quincy spends his weekends with her. Id. ¶ 8a. "Prior to February 29, 2016 and on many occasions," Cheryl would notice wounds and bruises on Quincy when picking him up from the Gateway center. Id. ¶ 11. "When [she] would return [him] to Gateway and question staff members concerning Quincy's wounds/bruises and/or ask for a investigation, she would never obtain a straightforward answer." Id. ¶ 12. In particular, no one ever told Cheryl that Quincy was being abused. Id. ¶ 12a. Early investigations did not uncover abuse. Id. ¶ 12b.

**Quincy Was Abused by a Gateway Employee**

On February 27, 2016, a Gateway staff member told another employee that she had seen Gateway's Errol Wilkins "hitting Quincy as well as another individual." Id. ¶ 15. Cheryl did

not learn of this. Id. ¶ 14. On February 29, 2016, she brought Quincy to a doctor for a medical examination. Id. ¶ 13. When she returned to Gateway, "no one . . . would confess . . . that Quincy was being abused." Id. ¶ 14.

However, Gateway launched an investigation that day. Id. ¶ 16. It substantiated the accusations, with employees saying they had seen Wilkins "hit Quincy . . . with his fist and/or open hand on several occasions and that this *has been going on for several weeks*." Id. ¶ 18 (alteration in original). Employees claimed Wilkins would hit clients "[a]t least 2-3 times a week, sometimes 2x per day," "for about 3 months," sometimes with a broken-off chair handle—and that they feared him because he was "a former gang member." Id. ¶¶ 21(g)-(i), 22(a), 25(a), 26(j)-(k); see also id. ¶ 25(g)-(h) ("**Everyone has seen it and I heard Errol had been spoken to about this . . . . a long time ago.**" (alteration in original)), ¶ 26(h) ("I and the other staff **have warned him** that he was going to get caught." (alteration in original)). Wilkins was terminated. Dkt. No. 14-1 at 4; Dkt. No. 17 at 16.

**Cheryl Sues Gateway**

Cheryl filed this lawsuit against Gateway in Glynn County State Court on November 15, 2016. Id. at 2. She alleged three state-law tort claims: failure to train and supervise,

negligent retention, and assault and battery. Id. ¶¶ 28-50. She also raised Section 1983. Id. ¶¶ 51-56.

Gateway removed the case on December 22, 2016. Dkt. No. 1. It moved for judgment on the pleadings on January 26, 2017. Dkt. No. 14. That motion has been fully briefed and is ripe for disposition. Dkt. Nos. 17, 21. While briefing was ongoing, Cheryl moved to amend her complaint. Dkt. No. 15. She seeks to add Wilkins as a defendant, and to add a fourth state-law tort claim, against Gateway and Wilkins for fraud. Id. ¶¶ 63, 79-87. Gateway responded in opposition, and that motion is also ripe. Dkt. No. 19.

## LEGAL STANDARDS

**Judgment on the Pleadings**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Flournoy v. CML-GA WB, LLC, No. CV 114-161, 2015 WL 2345594, at *1 (S.D. Ga. May 15, 2015). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task," guided by "judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Its "[f]actual allegations must be enough to

AO 72A (Rev. 8/82)

raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678. It has to "contain inferential allegations from which [the court] can identify each of the material elements necessary to sustain a recovery under some viable legal theory." <u>Roe v. Aware Woman Ctr. for Choice, Inc.</u>, 253 F.3d 678, 684 (11th Cir. 2001).

The court must assume the truth of a fact alleged in the complaint, but not "a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). When "a dispositive issue of law" shows "beyond all reasonable doubt" that "the plaintiffs can prove no set of facts that would entitle them to relief," the court can grant the defendants judgment on the pleadings. <u>Executive 100, Inc. v. Martin County</u>, 922 F.2d 1536, 1539 (11th Cir. 1991).

**Motion to Amend Complaint**

Given this case's posture, "a party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). "[D]enial of leave to amend is justified by futility when the 'complaint as amended

is still subject to dismissal.'" Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) (citation omitted).

**DISCUSSION**

Sovereign immunity bars Cheryl's state-law tort claims, but her Section 1983 claim survives, as does her contract-breach claim.

**I. SOVEREIGN IMMUNITY BARS CHERYL'S STATE-LAW TORT CLAIMS.**

Cheryl's state-law tort claims are barred. Cheryl concedes that Gateway is a government body entitled to sovereign immunity under Georgia law. Dkt. No. 17 at 13 (conceding Gateway to be "clothed with immunity"); see also Ga. Dep't of Nat. Res. v. Ctr. for a Sustainable Coast, Inc., 755 S.E.2d 184, 188 (Ga. 2014) (observing Georgia sovereign immunity protects "governments at all levels"); Youngblood v. Gwinnett Rockdale Newton Community Serv. Bd., 545 S.E.2d 875, 877 (Ga. 2001) (holding community-service boards, like Gateway, are "departments or agencies of the State" entitled to sovereign immunity). Courts cannot "abrogate or modify [Georgia's sovereign immunity]"—only the legislature can. Ctr. for a Sustainable Coast, Inc., 755 S.E.2d at 189 (citing GA. CONST. art. I § 2 ¶ IX(e)). An applicable legislative waiver of sovereign immunity has to be shown by the party claiming one. Sherin v. Dep't of Human Res., 494 S.E.2d 518, 522 (Ga. Ct. App. 1997).

Cheryl relies on O.C.G.A. § 50-21-23(a), which waives sovereign immunity "for the torts of state officers and employees while acting within the scope of their official duties or employment."[1] O.C.G.A. § 50-21-23(a). But this waiver is subject to limits listed in O.C.G.A. § 50-21-24. In particular, the State is immune as to "losses resulting from . . . . [a]ssault[ ] [or] battery." Id. § 50-21-24(7). Cheryl's state-law tort claims fall directly within this exception's shadow. To recall, those claims are for failure to train and supervise, negligent retention, assault and battery, and fraud. Even though most of them are not *for* assault or battery, they still *result from* assault or battery. See Dkt. No. 1-3 ¶¶ 28-41, 44-50; Dkt. No. 15-1 ¶¶ 79-87. The Court's "focus is not on which particular state law causes of action a plaintiff has set forth in her complaint, but rather on the underlying conduct that allegedly caused the plaintiff's loss." Davis v. Standifer, 621 S.E.2d 852, 857 (Ga. Ct. App. 2005). Cheryl's state-law tort claims all "aris[e] out of conduct that would constitute . . . assault or battery," so they are all barred.[2] Id. (barring claims for

---

[1] Gateway does not raise Georgia's retention of sovereign immunity as to tort claims brought against it in federal court, perhaps because Cheryl filed this case in state court. See O.C.G.A. § 50-21-23(b).
[2] Wilkins was allegedly a government employee, dkt. no. 15-1 ¶¶ 64-65, but even if he had not been, Gateway would still be immune. Youngblood, 545 S.E.2d at 878 (holding O.C.G.A. § 50-21-24(7) applies "regardless of who committed the act."); Cowart v. Ga. Dep't of Human Serv., No. A16A1515, 2017 WL 534877, at *2 (Ga. Ct. App. Feb. 8, 2017) ("[I]f a plaintiff's

AO 72A
(Rev. 8/82)

"negligent . . . hiring, instruction, supervision, control, and discipline of" police officer who allegedly sexually assaulted plaintiff during traffic stop); see also Pelham v. Bd. of Regents of Univ. Sys. of Ga., 743 S.E.2d 469, 471, 474 (Ga. Ct. App. 2013) (barring claims against overseers for negligent training and supervision of football staff after coach allegedly had player assault another player).

Cheryl contends that O.C.G.A. § 50-21-24(7) does not apply when the assault or battery "is the negligent implementation of a policy or negligent act not authorized by policy." Dkt. No. 17 at 15. But the authorities Cheryl cites concern other sovereign immunity exceptions.[3] See id. at 13-14 (discussing O.C.G.A. § 50-21-24(2)); Ga. Dep't of Pub. Safety v. Davis, 676 S.E.2d 1, 1-2 (Ga. 2009) (analyzing O.C.G.A. § 50-21-24(6)); Grant v. Ga. Forestry Comm'n, 789 S.E.2d 343, 346 (Ga. Ct. App. 2016) (analyzing O.C.G.A. §§ 50-21-24(2), (6)). Her objection fails. Cf. Sherin, 494 S.E.2d at 522 (avoiding O.C.G.A. § 50-21-24(2), given dismissal under O.C.G.A. § 50-21-24(7)).

---

injury was caused by an assault and battery committed by a third party, the state is immune from suit even if the assault and battery was facilitated by or resulted from the prior negligent performance of a state officer or employee." (citing Pelham v. Bd. of Regents of Univ. Sys. of Ga., 743 S.E.2d 469, 473 (Ga. Ct. App. 2013)).

[3] One O.C.G.A. § 50-21-24(7) case considers another exception. Cowart, 2017 WL 534877, at *2-3 (discussing O.C.G.A. § 50-21-24(2)). It did so for reasons absent here. Id. at *1-2 (noting plaintiff deleted physical-abuse allegations and replaced them with negligence ones, and did not appeal dismissals based on O.C.G.A. § 50-21-24(7)).

AO 72A
(Rev. 8/82)

The Court strongly sympathizes with Cheryl. But "[s]overeign immunity is a harsh doctrine, not an equitable one. Indeed, it is just the opposite of equity—it is the state declaring that it cannot be sued even where it would otherwise be liable." Pak v. Ga. Dep't of Behavioral Health & Dev. Disabilities, 731 S.E.2d 384, 386 (Ga. Ct. App. 2012) (citation omitted). Gateway's motion for judgment on the pleadings is **GRANTED** as to failure to train and supervise, negligent retention, and assault and battery. Because Cheryl's desired claim for fraud is also barred, and she only seeks to add Wilkins as a defendant for this claim, see dkt. no. 15-1 ¶ 62 *et seq.* (tacking Wilkins on at end of previous complaint, with only fraud count following), her motion to amend her complaint, dkt. no. 15, is **DENIED** as futile.

## II. CHERYL'S SECTION 1983 CLAIM SURVIVES.

However, Cheryl's Section 1983 claim will proceed. She relies only on the Fourteenth Amendment. Dkt. No. 17 at 22. Gateway concedes that if this Court finds Gateway to be a "person" subject to suit under Section 1983, its motion should be denied as to this claim. Dkt. No. 14-1 at 14 n.2. The Court makes such a finding. Section 1983 authorizes suits against "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). The term "person" does not include states or their agencies, and Gateway claims to be a state agency. Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989); Taylor v. Dep't of Pub. Safety, 142 F. App'x 373, 374-75 (11th Cir. 2005) (per curiam); Dkt. No. 14-1 at 11-14.

This argument is unpersuasive in light of the Eleventh Circuit's recent decision in Miller v. Advantage Behavioral Health Systems, No. 15-15496, 2017 WL 370850 (11th Cir. Jan. 26, 2017) (per curiam) (unpublished opinion).[4] There, the court considered the status of Georgia community-service boards like Gateway. Id. at *1; see also Dkt. No. 14-1 at 2 (describing Gateway as such a board), 13 n.1 (noting Miller decision was pending when Gateway's brief was filed). It weighed Georgia's deeming such boards to be state entities against the three factors of local control over them, their apparent "unfettered discretion to design [their] own funding mix," and limits on state liability for judgments against them. Id. at *3-7. It held that the boards are not "arm[s] of the State." Id. at *8.

---

[4] Gateway notes that the Section 1983 claim in Cheryl's complaint calls Gateway an "agency of the State of Georgia." Dkt. No. 1-3 ¶ 53; Dkt. No. 14-1 at 13 n.1; Dkt. No. 21 at 14. The Court deems this an immaterial imprecision, and not a concession, given the intervening Miller decision.

Miller was an Eleventh Amendment case. See id. at *8. "But in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and [the Court] decline[s] to adopt a reading of § 1983 that disregards it." Will, 491 U.S. at 66-67; see also id. at 70 (adopting Eleventh Amendment "arms of the State" test). It instead follows Miller by holding that Gateway is a person and not an arm of the State under Section 1983, and so **DENIES** Gateway's motion as to Cheryl's Section 1983 claim.

### III. CHERYL'S CONTRACT-BREACH CLAIM SURVIVES.

It does the same as to Cheryl's contract-breach claim. Georgia waives sovereign immunity for breaches of its <u>written</u> contracts. GA. CONST. art. 1 § 2 ¶ IX(c). The parties here only dispute whether there was a written contract for Quincy's behavioral services. Dkt. No. 14-1 at 18-22; Dkt. No. 17 at 16-24; Dkt. No. 21 at 10-13. A written contract has to be one document—or a series of contemporaneously signed documents—containing the essential elements of a contract: (1) parties able to contract; (2) consideration; (3) assent; and (4) subject matter. O.C.G.A. § 13-3-1; <u>Bd. of Regents of Univ. Sys. of Ga. v. Tyson</u>, 404 S.E.2d 557 (Ga. 1991).

Cheryl presented evidence of a contract in the form of a May 10, 2012 "Gateway Behavioral Health Services <u>DD</u>

Orientation Checklist," signed by Cheryl and a staff member, with tick marks next to "Review of program services," "Intake Assessment Form," "Consent to Use and Disclose Information," "Authorization(s) for Release of Information," "Consent for Services," "Financial Contract," "Consumer handbook," "Client Rights, Responsibilities and Complaints, Including Grievance Procedure," "Information about family involvement in treatment," and "Information about individualized treatment planning." Dkt. No. 17-1.[5] The existence of these other documents, and that they would reflect all four essential elements of a contract, are more than speculative. Such documents plausibly represent a behavioral-services contract between Quincy and Gateway, and between Gateway and Cheryl for Quincy's benefit. Cf. Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd., 545 S.E.2d 875, 878 (Ga. 2001).[6] Thus,

---

[5] This document can be considered. It is referenced in the complaint and central to Cheryl's claim. Dkt. No. 1-3 ¶¶ 3-3d (describing Gateway's contractual obligations "[a]t all times pertinent to this lawsuit"), 8 ("The parties entered into a contract for Gateway to provide Quincy with . . . behavioral services."). The Court can consider it even though it was attached to Cheryl's response and not to the complaint itself. Walch v. Adjutant Gen.'s Dep't of Tex., 533 F.3d 289, 294 (5th Cir. 2008); Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc., No. 12-CV-884, 2013 WL 3154116, at *2 n.2 (E.D. Wisc. June 21, 2013); Stewart v. Morgan State Univ., Civ. A. No. 11-3605, 2013 WL 425081, at *1 n.1 (D. Md. Feb. 1, 2013); Slaughter v. Fred Weber, Inc., 570 F. Supp. 2d 1054, 1058 n.1 (S.D. Ill. 2008); cf. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss . . . if [it] is (1) central to the plaintiff's claim and (2) undisputed. . . . [It] need not be physically attached . . . .").

[6] Unlike the documents in Youngblood that did not cover the date of the alleged injury, see id., Gateway does not contest that Quincy was in its care at the time he was injured. Dkt. No. 14-1 at 2-4. The Court also sees clear distinctions between this case and Kennedy v. Georgia Department of Human Resources Child Support Enforcement, 648 S.E.2d 727

AO 72A
(Rev. 8/82)

Gateway's motion for judgment on the pleadings as to Cheryl's contract-breach claim is **DENIED**.

## CONCLUSION

For the reasons above, Gateway's Motion for Judgment on the Pleadings, dkt. no. 14, is **GRANTED in part**, as to Cheryl Edenfield's claims for failure to train and supervise, negligent retention, and assault and battery. It is **DENIED in part**, as to Cheryl Edenfield's Section 1983 claim and her claim for negligent breach of contract. Cheryl Edenfield's Motion to Amend the Complaint, dkt. no. 15, **DENIED**.

**SO ORDERED**, this 15th day of May, 2017.

_____
LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

(Ga. Ct. App. 2007). That case was decided on summary judgment, and the only alleged contract there did not even have a signature line for the government defendant. Id. at 728.

AO 72A
(Rev. 8/82)